Gabriel N. Rubin (SBN 241659)
Liam N. Gaarder-Feingold (SBN 345747)
JACKSON LEWIS P.C.
50 California St., 9th Floor
San Francisco, California 94111
Telephone:    (415) 394-9400
Emails:        gabriel.rubin@jacksonlewis.com
               Liam.gaarderfeingold@jacksonlewis.com

Attorneys for Defendant
ALCLEAR, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNA M. GO, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>ALCLEAR, LLC; and DOES 1 to 100, inclusive,<br><br>        Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>(Filed concurrently with Declarations of Liam N. Gaarder-Feingold, Cecilia N. Kwok, Emma Barnett Bauman; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed:  August 15, 2025 |

CASE NO.:

1

NOTICE OF REMOVAL OF
ACTION TO THE UNITED
STATES DISTRICT COURT

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF JENNA M. GO, AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant ALCLEAR, LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Sacramento based on the Class Action Fairness Act of 2005 ("CAFA"). In support thereof, Defendant asserts the following:

<u>**SERVICE AND PLEADINGS FILED IN STATE COURT**</u>

1. On August 15, 2025, Plaintiff JENNA M. GO ("Plaintiff") filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of San Mateo, entitled *JENNA M. GO, on behalf of herself and all others similarly situated, Plaintiff, vs. ALCLEAR, LLC; and DOES 1 to 100, inclusive, Defendants*, Case No.: 25CV06195, which sets forth the following eight causes of action: (1) Failure to Pay Wages for All Hours Worked at Minimum Wage; (2) Failure to Pay Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Failure to Indemnify; (6) Failure to Pay Sick Leave; (7) Waiting Time Penalties; and (8) Unfair Competition. A true and correct copy of the Summons, Complaint, and Notice of Service of Process, and other related court documents received by Defendant's counsel are attached as Exhibit "A" to the Declaration of Liam N. Gaarder-Feingold ("Feingold Decl."). Feingold Decl. at ¶ 2 and Exhibit A ("Complaint").

2. As stated in paragraph 3 of the Complaint, Plaintiff brought this action on behalf of herself and a putative class consisting of "current, former, and/or future employees of Defendants. . . who work as hourly non-exempt employees." *Id.* at ¶ 3.

3. On August 27, 2025, Plaintiff served Defendant with a copy of the Summons and Complaint. Feingold Decl. at ¶ 3.

4. On September 25, 2025 Defendant filed and served an Answer to the Complaint in the San Mateo Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. A true and correct copy of Defendant's Answer is attached as Exhibit "B" to the Feingold Declaration. Feingold Decl. at ¶ 4 and Exhibit B ("Answer").

5.     As of the date of this Notice of Removal, Exhibits "A" and "B" to the Feingold Declaration constitute all of the pleadings received by Defendant or served by Defendant in this matter. *Id.* at ¶ 5.

## TIMELINESS OF REMOVAL

6.     This Notice of Removal has been filed within 30 days after Defendant was served with a copy of the Summons and Complaint on August 27, 2025. *Id.* at ¶ 2. Therefore, it has been filed within the time-period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also* Cal. Code Civ. Proc. § 415.30(b).

## VENUE IS PROPER

7.     This action was filed in the Superior Court in and for the County of San Mateo. Thus, venue of this action properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a) and 1441(a). Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides. The Complaint alleges that Plaintiff worked for Defendant in San Mateo County. Complaint at ¶¶ 2, 6.

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

8.     Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9.     In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

10.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000,

---

CASE NO.:                  3                NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT

exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant. *See* 28 U.S.C. §§ 1332(d), 1453. Further, Defendant is not a State, State official, or other governmental entity.

**A.    The Putative Class Contains More Than 100 Members.**

11.    Defendant's records identify in excess of 100 individuals including Plaintiff who have been employed by Defendant as non-exempt employees in the State of California during the "Putative Class Period" between August 15, 2021 and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class"). Declaration of Cecilia N. Kwok ("Kwok Decl.") at ¶ 4. Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.    None Of The Named Defendants Are Government Entities.**

12.    Defendant is neither a State, a State official, or any other governmental entity. Declaration of Emma B. Bauman("Bauman Decl.") at ¶ 3.

**C.    Minimal Diversity Is Satisfied Under CAFA.**

13.    CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants is a citizen. 28 U.S.C. § 1332(d)(2); *see also Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-9 (9th Cir. 2010)  (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

14.    Citizenship of the parties is determined by their citizenship status at the action's commencement. *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

15.    For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to

return."). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16.    Defendant is informed and believes, as alleged by Plaintiff in her Complaint, that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. Complaint at ¶ 3; Kwok Decl. at ¶ 3.

17.    For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019). CAFA expressly states that "for purposes of this section . . . an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

18.    With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

19. At the time Plaintiff filed the Complaint and presently, Defendant has been a limited liability company organized under the laws of the State of Delaware. Bauman Decl. at ¶ 4. At all relevant times, Defendant's company headquarters – and thus its principal place of business – has been in the State of New York where the majority of Defendant's executive, administrative, financial and management functions are conducted, and from where the majority of Defendant's high-level officers direct, control, and coordinate and control the company's operations and activities. *Id*. Accordingly, for purposes of removal under CAFA, Defendant is a citizen of the States of Delaware and New York and is not a citizen of the State of California.

20. Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while Defendant was – and still is – a citizen of the States of Delaware and New York.[1] 28 U.S.C. § 1332(d)(2).

**D.** **The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.**[2]

21. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a

---

[1] The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. 28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007)

[2] Defendant denies the allegations set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendant also denies that any of Plaintiff's claims are appropriate for class treatment. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

---

CASE NO.:                                      6                    NOTICE OF REMOVAL OF
                                                                   ACTION TO THE UNITED
                                                                   STATES DISTRICT COURT

purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

22.     In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) for the proposition that the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim").  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969)).

23.     Further, a removing party is "permitted to rely on 'a chain of reasoning that includes assumptions' to calculate the amount in controversy" and those reasonable assumptions "can be 'founded on the allegations of the complaint'" and "do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.* 131 F.4th 804, 806 (9th Cir. 2025) ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint") (*quoting Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019)).  Only when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—is the removing party required to present evidence to support the assumptions made.  *Id.* at 808 (*citing Ibarra v. Manheim Invs*., Inc., 775 F.3d 1193, 1198 (9th Cir. 2015)); *see also Rubel v. U.S. Nursing Corp*., No. 1:23-cv-1664-JLT-CDB, 2025 U.S. Dist. LEXIS 54087 at *19-20 (E.D. Cal. Mar. 24, 2025).

24.     Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against

CASE NO.:                                   7                          NOTICE OF REMOVAL OF
                                                                       ACTION TO THE UNITED
                                                                       STATES DISTRICT COURT

CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

25.    In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held, like here, that when the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted). Further, "'[n]o 'antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) (quoting *Dart,* 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

26.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See e.g., Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per

week reasonable . . . [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements . . . reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

27. Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the factual allegations and causes of action set forth in the Complaint[3] conservatively places an aggregate amount in controversy exceeding $5,000,000 exclusive of attorneys' fees, interest, and costs. Plaintiff's complaint asserts numerous claims for unpaid overtime wages, unpaid meal and rest premium wages, failure to pay all sick time, failure to reimburse necessary business expenses, and failure to timely pay final wages upon separation (waiting time penalties). Without waiving the right to establish that each claim puts into controversy amounts which would cumulatively be in excess of $5,000,000, Plaintiff's claim for waiting time penalties alone, under Labor Code section 203, puts the amount in controversy over $5,000,000.

///

---

[3] *See*, *e.g.*, *Perez*, 131 F.4th at 808; *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

28.    The Complaint alleges "Pursuant to Labor Code section 203, Plaintiff and the . . . [Putative Class Members] . . . are entitled to continuation of their wages, from the day their earned and unpaid wages were due until paid, up to a maximum of thirty (30) days." Complaint at ¶ 153. The Complaint ties Plaintiff's claim for waiting time penalties to her underlying claims for failure to pay minimum wage, pay overtime wages, provide proper meal periods, provide proper rest periods, and pay wages for accrued sick time: "As a result of the aforementioned violations of the Labor Code, Plaintiff alleges that she and on information and belief, other similarly situated employees, were not paid their final wages in a timely manner." *Id.* at ¶ 49. Plaintiff further alleges "Defendants' failure to pay Plaintiff and the. . .[Putative Class Members]. . . with all wages earned prior to separation of employment timely. . .was willful." *Id.* at ¶ 151.

29.    During the period from August 15, 2022 until July 16, 2024,[4] at least 1,500 full-time Putative Class Members have been terminated, resigned, or have otherwise separated from their employment with Defendant. (Kwok Decl. at ¶ 4.)   The average hourly rate for those employees at the time of separation was more than $19.00.  (Id.)  Thus, while Defendant completely denies Plaintiff is entitled to recover any waiting time penalties, or any other damages for allegedly unpaid wages, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $6,840,000.00 in controversy in connection with her claim for waiting time penalties (more than $19.00 average hourly rate x 8 hours/day x 30 days x at least 1,500 Putative Class Members).

30.    Assuming a 100% violation rate and 30 days of wages is reasonable for purposes of establishing the amount in controversy where, as here, the plaintiff has tied her claim for waiting time penalties to the defendant's alleged policies and practices to deny putative class members earned wages. *See, e.g., Jauregui v. Roadrunner Transp. Servs*. (9th Cir. 2022) 28 F.4th 989, 993-994 (holding the district court erred in rejecting the defendant's assumption that all former employees were entitled to the full 30 days of waiting time penalties: "The district court did not afford Roadrunner this latitude when analyzing the amount in controversy. As one example, the court rejected Roadrunner's assumption that each terminated employee would have been entitled to the maximum 30-day waiting time penalty because Roadrunner

---

4    This period is the beginning of the 3-year statute of limitations that applies to Labor Code section 203, up to and until 30 days before the filing of the Complaint. *See Pineda v. Bank of America NA*, 50 Cal.4th 1389 (2010).

'provides no evidence' supporting that fact. But it was not unreasonable for Roadrunner to assume that the vast majority (if not all) of the alleged violations over the four years at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty. The fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim."); *Ramos v. Schenker, Inc.*, No. 5:18-cv-01551-JLS-KK, 2018 U.S. Dist. LEXIS 187557, at *7 (C.D. Cal. Nov. 1, 2018) (denying plaintiff's motion to remand and holding: "Whereas assumptions about the regularity and extent of the underlying overtime violations may be fairly contested at this stage, the very nature of a class action complaint for unpaid overtime wages requires Plaintiff to allege that putative class members have not received all wages owed in violation of the law. Therefore, Plaintiff's allegations of unpaid wages are implicit allegations of maximum damages for waiting time penalties. This reasoning is shared by other courts in this circuit."); *see, e.g., Mendoza*, 2022 U.S. Dist. LEXIS 167940, at *17-18 (finding the defendant's assumption of a 100% violation rate to be reasonable "because Defendant…need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply") (citation and internal quotation marks omitted).); *Marentes v. Key Energy Servs. Cal.* (E.D. Cal. Feb. 23, 2015, No. 1:13-cv-02067 AWI JLT) 2015 U.S. Dist. LEXIS 21377, at *23 ("Because these wages are alleged to have not been paid, the full thirty-days may be used for each of the putative class members."); *Roth v. Comerica Bank* (C.D. Cal. 2010) 799 F.Supp.2d 1107, 1125-1126 ("The court agrees that Roth's allegations suggest all class members were denied some form of proper compensation during their employment, and that the underpayment was not corrected at end of their employment. Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203."); *Avila v. Northwood Hosp. LLC* (C.D. Cal. Feb. 5, 2024, No. 2:23-cv-09598-SB-AS) 2024 U.S. Dist. LEXIS 19850, at *11 (denying plaintiff's motion to remand and holding: "Defendant identifies 84 employees who have separated from their employment with Defendant since September 18, 2020. As in *Jauregui*, it is reasonable to assume that all 84 of these employees are entitled to the full 30-day penalty.").

31.    Plaintiff also seeks an unspecified amount of attorneys' fees in connection with her putative class claims for failure to pay minimum wage; failure to pay overtime wages; failure to indemnify for reasonably expenses, failure to timely pay wages; and unfair business practices. Complaint at ¶¶ 59, 72, 98,

156, 160, Prayer for Relief. The Court must consider and include these fees and costs in determining the amount in controversy. *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted). Attorney fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

32.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth

Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

33.    Thus, while Defendant completely denies Plaintiff is entitled to recover any damages or corresponding attorneys' fees, the Court should consider attorneys' fees of at least $1,710,000.00, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraph 29 above in connection with Plaintiff's putative class claim for waiting time penalties. *See, e.g., Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

34.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's claims for waiting time penalties and attorneys' fees alone is over **$8,550,000.00**  which surpasses the $5,000,000 jurisdictional threshold required under CAFA.[5]

### NOTICE TO ALL PARTIES AND STATE COURT

34.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the San Mateo County Superior Court.  Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

### CONCLUSION

35.    Based on the foregoing, Defendant hereby removes the above-captioned action from the Sacramento County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d),

---

[5]    As stated above, Plaintiff has alleged six other wage claims apart from her claim for waiting time penalties under Labor Code section 203. Defendant reserves its right to bring forth additional evidence to establish the potential damages for those other claims in order to satisfy the amount in controversy under CAFA and will do so if the Court believes it necessary.

CASE NO.:                                      13                    NOTICE OF REMOVAL OF
                                                                    ACTION TO THE UNITED
                                                                    STATES DISTRICT COURT

1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.

Dated:  September 26, 2025                    JACKSON LEWIS P.C.


                                             By:      */s/Gabriel N. Rubin*
                                                      Gabriel N. Rubin
                                                      Liam N. Gaarder-Feingold
                                                      Attorneys for Defendant
                                                      ALCLEAR, LLC

4929-3311-6260, v. 2