1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

JENNA M. GO,

            Plaintiff,

    v.

ALCLEAR, LLC,

            Defendant.

Case No. 25-cv-08216-LB

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Re: ECF No. 10

## INTRODUCTION

Alclear, LLC — a biometric technology company offering screening services for travel and other industries — moved to compel arbitration of the plaintiff's claims against it for various violations of the California Labor Code and Business and Professions Code. Alclear points to its processes requiring employees to sign an agreement requiring arbitration and to Clear Hub, its electronic document repository that automatically time stamps an employee's Clear Hub transcript when a document is signed. The plaintiff responds that she does not remember signing an arbitration agreement and that, even if she had, Alclear has not produced a signed agreement, any agreement terminated when her employment ended, and the agreement is unconscionable.

The court compels arbitration: the Clear Hub transcript shows that the plaintiff signed the agreement, the agreement still applies to the plaintiff's claim after her employment ended, and the agreement is enforceable after severing the provision waiving representative PAGA claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT**

Alclear is a nationwide biometric technology company offering secure and expedited screening services in airline travel, sports, and other industries. It has employees called "ambassadors" who are stationed at airports and help verify the identities of customers using biometric data, like fingerprints and irises.[1] The plaintiff was employed as an ambassador with Alclear at the San Francisco International Airport from December 2022 to September 2023.[2]

In January 2019, Alclear instituted its "Clear Happiness Commission Compensation Agreement," a four-page document with an arbitration section requiring Alclear and its employees to submit all employment-related disputes to arbitration on an individual basis under the American Arbitration Association's (AAA) rules for employment arbitration. The provision reads:

> **3.8 <u>Arbitration</u>**. For good and valuable consideration, including continued at-will employment with Alclear, ability to participate in the Agreement and Alclear's agreement to be bound by this provision, Ambassador agrees that any disputes arising out of or relating to this Agreement, or Ambassador's employment with Alclear or termination, shall be resolved exclusively by final and binding arbitration on an individual basis before one neutral arbitrator. Any type of class, collective or multi-party claims are prohibited and the arbitrator will have no authority to alter the parties' agreement in this regard or to consider or resolve any claim or issue or provide any relief on any basis other than an individual basis. The arbitration will be held in the county in which Ambassador last worked under the Model Rules for Arbitration of Employment Disputes of the American Arbitration Association ("AAA"). The parties voluntarily and irrevocably waive any and all rights to have any dispute heard or resolved in any forum other than through arbitration, including but not limited to, a jury trial. This does not limit the right of either party to apply to a court of competent jurisdiction for any provisional remedy pending the completion of arbitration consistent with applicable law. Alclear will bear all fees and costs unique to arbitration, including the Arbitrator's fee and each party shall pay for its own attorneys' fees and costs. However, the Arbitrator may award reasonable attorneys' fees to the prevailing party in accordance with this Agreement or applicable law. The parties shall be entitled to any remedy which would have been available in court. Any award shall be in writing. Either party may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and/or to enforce an arbitration award. If, in any action to enforce this Agreement, a court of competent jurisdiction rules that any portion of the parties' agreement to arbitrate is not enforceable, then the parties agree that this provision be severed and

---

[1] Royer Decl. – ECF No. 10-2 at 2 (¶ 3). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶ 4).

the remainder of the agreement be enforced. Nothing herein prevents Ambassador from filing a charge with an administrative agency.[3]

The Compensation Agreement contains a governing law section stating that "[t]he construction and operation of this Agreement are governed by the laws, rules, and judicial decisions of the State of New York, except as superseded by federal law or the laws of jurisdiction you work in."[4] The agreement "terminate[s] upon the earlier of CLEAR providing written notice to the Ambassador of termination of this Agreement, removal from the commission plan, or the end of the Ambassador's employment with CLEAR; however, the terms of this Agreement shall survive such termination."[5] All Alclear hourly employees have been required to electronically sign the Compensation Agreement when starting their employment and upon circulation of any updated versions of the agreement.[6]

Since 2017, Alclear has maintained an electronic Learning Management System called "Clear Hub" to provide and store employment documents including agreements, onboarding documents, policies, and training documents, which can be retrieved through links on Clear Hub.[7] To ensure the individual reviewing and signing documents on Clear Hub is the intended employee, the employee must log into Clear Hub using a Single Sign On and unique password that all new employees set up through Okta, an access management company. The employees then enter their name, password, and other personal information to complete the process of creating the Clear Hub record. Employees cannot access Clear Hub without entering their Single Sign On, and no one at Alclear can discover another individual's unique password.[8]

Clear Hub automatically generates a time stamp on the employee's Clear Hub transcript reflecting the date and time a document was signed, and Clear Hub administrators can generate exception reports or transcripts listing the policies and agreements that each employee has signed

---

[3] *Id.* at 2–3 (¶ 5); Comp. Agreement, Ex. A to *id.* – ECF No. 10-2 at 9 (§ 3.8).

[4] Comp. Agreement, Ex. A to Royer Decl. – ECF No. 10-2 at 9 (§ 3.7).

[5] *Id.* at 8 (§ 3.3).

[6] Royer Decl. – ECF No. 10-2 at 3 (¶ 6).

[7] *Id.* (¶ 7).

[8] *Id.* (¶ 8).

1    with the date and time of signing. Alclear employees are given the opportunity to review and print

2    all documents contained on Clear Hub.[9]

3         Alclear provided its employees the Compensation Agreement through a link on Clear Hub.[10]

4    To complete the document, employees were required to (1) log on to Clear Hub using their Single

5    Sign On, (2) click the link to the Compensation Agreement, (3) click through each page of the

6    agreement, (4) click the "Start" button on the next screen below where it says "Esignature

7    Required," (5) type their first and last name in the box on the next screen to the right of the words

8    "Electronic Signature," (6) check a box below the electronic signature affirming that the employee

9    "understand[s] that checking this box constitutes a signature confirming that [the employee has]

10   read, understood and accept[s] the contents herein," and (7) click the "Save" button on the same

11   screen.[11] Completing this process automatically creates a record of that document being signed on

12   the employee's Clear Hub transcript.[12]

13        The plaintiff's Clear Hub transcript shows that she signed the Alclear Compensation

14   Agreement on March 25, 2023.[13] Alclear contends that because of the Single Sign On and unique

15   password, no one other than the plaintiff could have signed the Compensation Agreement.[14]

16        The plaintiff recalls that in March 2023 she was instructed to go to the company office and use

17   a computer to sign paperwork. The plaintiff logged onto the company portal, completed the

18   assigned modules, and reviewed and signed some lengthy documents. At the end of the process

19   the plaintiff was provided a short amount of time to review and sign an updated Commissions

20   Agreement — a mandatory condition of her employment. The plaintiff was not provided with a

21   copy of the documents to review in advance or informed that she would be required to sign

22   documents that day. She does not recall being able to print any documents and was unable to

23

24   ───────────────

[9] *Id.* at 4 (¶ 8).

25   [10] *Id.* (¶ 9).

26   [11] *Id.* (¶ 10); Screenshots, Ex. B to *id.* – ECF No. 10-2 at 12–20.

     [12] Royer Decl. – ECF No. 10-2 at 5 (¶ 11).

27   [13] *Id.* (¶ 12); Pl.'s Clear Hub Tr., Ex. C to *id.* – ECF No. 10-2 at 22.

28   [14] Royer Decl. – ECF No. 10-2 at 5 (¶ 13).

1  review them with an attorney. The plaintiff was also unable to negotiate the terms of the

2  documents.[15]

3          During her employment with Alclear, the plaintiff did not understand what arbitration was and

4  does not recall signing an arbitration agreement. There was no discussion about arbitration during

5  her onboarding or at any point during her employment. The plaintiff did not intend to waive her

6  right to a jury trial or her right to bring certain claims in federal court.[16] The plaintiff was not in a

7  stable enough financial position to lose her job by refusing to sign an arbitration agreement.[17]

8

9                                               **ANALYSIS**

10         Under the Federal Arbitration Act (FAA), "arbitration is a matter of contract, and courts must

11  enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer and White*

12  *Sales, Inc.*, 586 U.S. 63, 67 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67

13  (2010)). "Section 2 of the FAA makes agreements to arbitrate 'valid, irrevocable, and enforceable,

14  save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Poublon v.*

15  *C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) (citing 9 U.S.C. § 2). "By its terms, the

16  Act leaves no place for the exercise of discretion by a district court, but instead mandates that

17  district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

18  agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing

19  9 U.S.C. §§ 3–4). "The court's role under the Act is therefore limited to determining (1) whether a

20  valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

21  dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)

22  (citing 9 U.S.C. § 4). "If the response is affirmative on both counts, then the Act requires the court

23  to enforce the arbitration agreement in accordance with its terms." *Id.*

24

25

26  _____

27  [15] Go Decl. – ECF No. 12-1 at 2 (¶ 3).

    [16] *Id.* (¶ 4).

28  [17] *Id.* at 2–3 (¶¶ 4, 7).

United States District Court
Northern District of California

The parties dispute whether Alclear has established that an arbitration agreement exists, whether the agreement still applies to the plaintiff now that she no longer works for Alclear, and whether the agreement is unconscionable. The court grants the motion to compel arbitration: the Clear Hub transcript shows that the plaintiff signed the Compensation Agreement, the agreement applies to the plaintiff's claims, and the agreement is enforceable after severing the provision waiving representative PAGA claims.

### 1. Existence of the Arbitration Agreement

The plaintiff asserts that because she does not remember signing a document with an arbitration clause, Alclear must provide a copy of the Commission Agreement bearing her signature to meet its burden, which it has not done.[18] Alclear counters that the transcript showing that the plaintiff signed the agreement plus the Royer declaration explaining the electronic records process meets its burden of proving the existence of the arbitration agreement.[19]

The electronic record and declaration establish the existence of the arbitration agreement.

"'Arbitration is a matter of contract,' and there is 'a liberal federal policy favoring arbitration agreements.'" *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 739 (9th Cir. 2014) (quoting *Rent-a-Ctr.*, 561 U.S. at 67; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). But "[courts] do not apply the so called 'presumption in favor of arbitrability' in every case." *Id.* at 742. "Where the arbitrability of a dispute is contested, [courts] must decide whether the parties are contesting the *existence* or the *scope* of an arbitration agreement." *Id.* "If the parties contest the *existence* of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Id.* "The presumption in favor of arbitrability applies only where the *scope* of the agreement is ambiguous as to the dispute at hand, and [courts] adhere to the presumption and order arbitration only where the presumption is not rebutted." *Id.* (cleaned up). Where a party contests the existence of an arbitration agreement, "[courts] use general state-law principles of

---

[18] Opp'n – ECF No. 12 at 10–11.

[19] Reply – ECF No. 14 at 2–3.

contract interpretation to decide whether a contractual obligation to arbitrate exists." *Id.* at 743
(citing *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009)).

The party seeking to compel arbitration bears the burden of proving the existence of a valid
arbitration agreement by a preponderance of the evidence. *See Bridge Fund Cap. Corp. v.
Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010). Under California law, "[t]he
terms of an offer must be met exactly, precisely and unequivocally for its acceptance to result in
the formation of a binding contract." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Hock
Inv. Co.*, 68 Cal. App. 4th 83, 89 (1998) (cleaned up). This precept applies to arbitration
provisions within contracts. *See id.*

Alclear has met its burden of establishing the existence of the arbitration agreement. The
Royer declaration explains in detail the steps required for the plaintiff's Clear Hub transcript to
indicate that she signed the agreement, including that it required using unique login criteria known
only to the plaintiff, clicking through each page of the agreement, checking a box confirming that
the plaintiff read, understood, and accepted the terms of the agreement, and typing the plaintiff's
name in the signature box.[20] Even without the actual signed agreement, the process described by
Alclear establishes that the plaintiff electronically signed the Compensation Agreement. *See
Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1060–62 (2016) (e-signature
was authentic when the employee had to use a unique username and password only the employee
knew). That the plaintiff does not remember signing the agreement does not negate the
agreement.[21] *See id.* (citing *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836 (2014)) (a
lack of memory can defeat an arbitration clause when the employer provides no explanation of the
processes for an e-signature).

The plaintiff's analogy to *Mitri v. Arnel Management Co.* is unpersuasive.[22] 157 Cal. App. 4th
1164 (2007). The court in *Mitri* denied a motion to compel arbitration because, although the

---

[20] Royer Decl. – ECF No. 10-2 at 3–5 (¶¶ 7–13).

[21] Reply – ECF No. 14 at 4.

[22] Opp'n – ECF No. 12 at 9–11.

plaintiff had signed an acknowledgement (with no mention of an arbitration provision) of receiving an employee handbook, there was no evidence that she signed the actual arbitration agreement in the handbook. *Id.* at 1170. The Clear Hub transcript is different from the acknowledgement in *Mitri* because it shows that the plaintiff signed the actual arbitration agreement rather than only received the documentation.[23]

### 2. Applicability of the Commission Agreement to the Plaintiff

The plaintiff contends that the Commission Agreement does not apply to her because she is no longer employed with Alclear, pointing to the agreement's language that "[a]n Ambassador will stop participating in this Agreement when: (a) the Ambassador's employment with CLEAR ends."[24] Alclear counters that "participation" in the agreement refers to the plaintiff's participating in the commission plan and that other language in the agreement would be superfluous if the plaintiff's reading were correct.[25]

The language in the Compensation Agreement shows the parties' intention that it apply to the plaintiff's claims despite her no longer being employed with Alclear. The arbitration provision states that it governs "any disputes arising out of or relating to this Agreement, or Ambassador's employment with CLEAR or termination."[26] The plaintiff's interpretation of the agreement would render the term "termination" meaningless because claims arising out of termination would necessarily never be subject to the agreement.[27] *See Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013) (courts should "give effect to all of a contract's terms, and . . . avoid interpretations that render any portion superfluous, void or inexplicable"). The agreement also states that even after the end of employment with Alclear, "the terms of this Agreement shall survive such

---

[23] Reply – ECF No. 14 at 3 (making this point).

[24] Opp'n – ECF No. 12 at 11; Comp. Agreement, Ex. A to Royer Decl. – ECF No. 10-2 at 7 (§ 1.2).

[25] Reply – ECF No. 14 at 4–5.

[26] Comp. Agreement, Ex. A to Royer Decl. – ECF No. 10-2 at 9 (§ 3.8).

[27] Reply – ECF No. 14 at 5.

United States District Court
Northern District of California

1    termination."[28] Alclear's reading of the language that "[a]n Ambassador will stop participating in

2    this Agreement" refers to participation in the commission plan is consistent with these provisions.

3

4    **3.   Unconscionability**

5        The FAA provides that arbitration agreements are unenforceable "upon such grounds as exist

6    at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[G]enerally applicable

7    contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate

8    arbitration agreements without contravening" federal law. *Doctor's Assocs., Inc. v. Casarotto*, 517

9    U.S. 681, 687 (1996). "Under California law, 'the party opposing arbitration bears the burden of

10   proving any defense, such as unconscionability.'" *Poublon*, 846 F.3d at 1260 (quoting *Pinnacle*

11   *Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

12       In California, contractual unconscionability has procedural and substantive components.

13   *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). "[T]he former

14   focus[es] on oppression or surprise due to unequal bargaining power, the latter on overly harsh or

15   one-sided results." *Id.* (cleaned up). "Procedural and substantive unconscionability 'need not be

16   present in the same degree.'" *Poublon*, 846 F.3d at 1260 (quoting *Sanchez v. Valencia Holding Co.*,

17   61 Cal. 4th 899, 910 (2015)). "Rather, there is a sliding scale: 'the more substantively oppressive the

18   contract term, the less evidence of procedural unconscionability is required to come to the conclusion

19   that the term is unenforceable, and vice versa.'" *Id.* (quoting *Sanchez*, 61 Cal. 4th at 910).

20   **3.1   Procedural Unconscionability**

21       Procedural unconscionability focuses on the circumstances surrounding the negotiation of the

22   contract. *Gatton v. T–Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007). "Oppression arises

23   from an inequality of bargaining power which results in no real negotiation and an absence of

24   meaningful choice." *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008) (cleaned up). "Surprise

25   involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a

26   prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (cleaned up).

27

28   ---
     [28] Comp. Agreement, Ex. A to Royer Decl. – ECF No. 10-2 at 8 (§ 3.3).

United States District Court
Northern District of California

1    The plaintiff asserts that the Compensation Agreement is unconscionable because it is a

2    contract of adhesion, it made no reference to the arbitration provision until page three, the plaintiff

3    only had a short time to complete and review the agreement, she was not provided a copy of the

4    agreement in advance, she was not allowed to negotiate terms, and she was not given chance to

5    have her review aided by an attorney.[29] Alclear responds that the agreement has minimal

6    procedural unconscionability because the plaintiff was responsible for reading the Compensation

7    Agreement, adhesion alone is not enough to make a contract unconscionable, and the plaintiff does

8    not allege that a manager required her to execute the agreement quickly.[30]

9    Overall, the Compensation Agreement at most has moderate procedural unconscionability. The

10    Compensation Agreement is less than four full pages, the arbitration provision is labeled in

11    conspicuous font, and the plaintiff does not assert that anyone verbally pressured her to sign it.

12    That the contract is adhesive and that the plaintiff only had a short amount of time to review the

13    agreement without an attorney supports some procedural unconscionability. *See Beco v. Fast Auto*

14    *Loans, Inc.*, 86 Cal. App. 5th 292, 301 (2022) ("significant" oppression resulted in a moderate

15    amount of unconscionability where the plaintiff was "given a few minutes to quickly acknowledge

16    a multitude of documents" and "was told by supervisors that if he did not agree to acknowledge

17    the documents, he would be terminated"); *see also Baxter v. Genworth N. Am. Corp.*, 16 Cal. App.

18    5th 713, 723 (2017), *disapproved on other grounds by Ramirez v. Charter Commc'ns, Inc.*, 16

19    Cal. 5th 478 (2024) (same result on oppression but no discussion of the level of procedural

20    unconscionability).

21    Other cases that the plaintiff cites as supporting that she experienced a high degree of

22    oppression and surprise are distinguishable because the plaintiff understood English and the

23    Compensation Agreement is four pages with the arbitration provision labeled in conspicuous

24    language and no fine print. *Sanchez v. Super. Ct.* 108 Cal. App. 5th 615, 626–27 (2025) (the

25    agreement was procedural unconscionable where it was solely in English and the employee had no

26

27    _____

    [29] Opp'n – ECF No. 12 at 13–15.

28    [30] Reply – ECF No. 14 at 6–7.

United States District Court
Northern District of California

fluency in speaking, reading, or writing English and the equivalent of 6th grade education in Mexico); *Ali v. Daylight Transp., LLC*, 59 Cal. App. 5th 462, 474 (2020) (procedural unconscionability where the agreement was a fifteen-page document with small font and the plaintiff was under pressure to sign and not given the opportunity to consult with an attorney or negotiate terms).

### 3.2    Substantive Unconscionability

No matter how great the procedural unconscionability, a contract is enforceable under California law unless it is also substantively unconscionable. *Correa v. Firestone Complete Auto Care*, No. C 13-03123 CW, 2013 WL 6173651, at *3 (N.D. Cal. Nov. 25, 2013) (citing *Armendariz*, 24 Cal. 4th at 114). Substantive unconscionability focuses on the harshness and one-sidedness of a contract's substantive terms. *Id.* (citing *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982)).

The plaintiff challenges multiple provisions of the compensation agreement as unconscionable, contending that it lacks mutuality because Alclear can modify or terminate the agreement at any time, violates Cal. Lab. Code § 925 by requiring the application of New York law, subjects employees to costs that are unique to arbitration, limits statutory attorney's fees or costs, and waives rights to recover statutory costs, seek public relief, and bring representative PAGA claims (because relief by the arbitrator is limited to being on "an individual basis").[31] Alclear counters that the compensation agreement does not purport to do what the plaintiff says and, to the extent that any provision is unconscionable, it can be severed and the remaining agreement still enforced.[32]

The provision requiring that all relief be on an individual basis (precluding a representative PAGA claim) is unconscionable but severable, and the remaining provisions are not unconscionable.

First, the plaintiff asserts that because the Compensation Agreement is governed by New York law, it violates the requirement in Cal. Lab. Code § 925 that agreements may not "[d]eprive the

---

[31] Opp'n – ECF No. 12 at 15–24.

[32] Reply – ECF No. 14 at 7–10.

1    employee of the substantive protection of California law with respect to a controversy arising in

2    California."[33] But this ignores that the Compensation Agreement says that New York law applies,

3    "except as superseded by federal law or the laws of the jurisdiction you work in."[34] Thus, the

4    agreement does not deprive the plaintiff of substantive protection of California law.

5        Second, the arbitration provision does not subject employees to costs unique to arbitration or

6    waive the right to recover statutory costs but instead states that the parties are "entitled to any

7    remedy which would have been available in court" and that Alclear will bear "all fees and costs

8    unique to arbitration."[35] These provisions comply with *Armendariz* and do not expose the plaintiff

9    to costs she would not incur in federal court.[36] 24 Cal. 4th at 110–11 ("[W]hen an employer

10   imposes mandatory arbitration as a condition of employment, the arbitration agreement or

11   arbitration process cannot generally require the employee to bear any *type* of expense that the

12   employee would not be required to bear if he or she were free to bring the action in court."). The

13   plaintiff cites no case where provisions stating that the employer would bear fees and costs unique

14   to arbitration were found unconscionable.[37] *See Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242,

15   1248–49 (2011) (costing-sharing provision in an arbitration agreement was unconscionable in the

16   Fair Employment and Housing Act (FEHA) context because FEHA allows a prevailing plaintiff to

17   recover attorney fees but a prevailing defendant only if the case was frivolous or filed in bad

18   faith); *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 254–55 (2015) (no provision

19   stating that the employer will bear all fees and costs unique to arbitration); *Pappas v. AMN

20   Healthcare Servs.*, 762 F. Supp. 3d 862, 868 (N.D. Cal. 2025) (same).

21       Third, the arbitration provision does not violate the *McGill* rule's prohibition on waiving

22   public injunctive relief because the plaintiff does not seek that relief, and the plaintiff's argument

---

[33] Opp'n – ECF No. 12 at 18–19.

[34] Comp. Agreement, Ex. A to Royer Decl. – ECF No. 10-2 at 9; Reply – ECF No. 14 at 8.

[35] Comp. Agreement, Ex. A to Royer Decl. – ECF No. 10-2 at 9; Reply – ECF No. 14 at 8–9.

[36] Reply – ECF No. 14 at 8–9.

[37] Opp'n – ECF No. 12 at 22–24.

United States District Court
Northern District of California

that it does not matter whether or not she pursues public injunctive relief has been foreclosed.[38] *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 540–41 (9th Cir. 2021) ("[*McGill*] forecloses Hodges' argument that courts should stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute.").

Fourth, the plaintiff contends that the arbitration agreement is substantively unconscionable as illusory because of provisions allowing Alclear to unilaterally modify or terminate the agreement. But these provisions are not illusory "because the good faith and fair dealing implied covenant limits unilateral action by a contracting party."[39] *Harris v. TAP Worldwide*, LLC, 248 Cal. App. 4th 373, 389–90 (2016), *abrogating Sparks v. Vista Del Mar Child & Family Servs.*, 207 Cal. App. 4th 1511 (2012).

Finally, by saying that the arbitrator will have no authority to provide relief on anything other than an individual basis, it necessarily precludes representative PAGA claims, even without mentioning PAGA.[40] *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662–63 (2022) (discussing "individual" and "non-individual" PAGA claims). While assessing compliance with the *McGill* rule requires that the plaintiff assert the relevant relief, the same is not true for PAGA waivers, and Alclear cites no contrary authority.[41] *Hasty v. Am. Auto. Ass'n*, 98 Cal. App. 5th 1041, 1063 (2023) ("[I]t is irrelevant that Hasty has not brought a private attorney general action."); *Subcontracting Concepts (CT), LLC v. De Melo*, 34 Cal. App. 5th 201, 212 (2014) ("The question in determining unconscionability, however, does not involve comparing the terms of the arbitration clause with the nonarbitration claims respondent is pursuing."). Thus, this provision is unenforceable.

The question then is whether to sever this problematic term from the contract and enforce the arbitration clause or deem the entire arbitration agreement unenforceable. The decision to sever is in the trial court's discretion. *Armendariz*, 24 Cal. 4th at 121–22; *Newton v. Am. Debt Servs., Inc.*,

---

[38] Reply – ECF No. 14 at 9 (making this point).

[39] Opp'n – ECF No. 12 at 16–18.

[40] *Id.* at 21; Reply – ECF No. 14 at 9–10.

[41] Opp'n – ECF No. 12 at 21; Reply – ECF No. 14 at 9–10.

United States District Court
Northern District of California

1    549 F. App'x 692, 695 (9th Cir. 2013). The "overarching inquiry is whether the interests of

2    justice . . . would be furthered by severance." *Armendariz*, 24 Cal. 4th at 124 (cleaned up).

3       The Ninth Circuit has determined that severance is appropriate in similar circumstances.

4    *Poublon*, 846 F.3d at 1273–74 (arbitration provision was valid after clause allowing only the

5    employer to seek judicial resolution of certain claims and limiting the waiver of representative

6    claims to non-PAGA claims). The plaintiff has not identified a case where the presence of a single

7    PAGA waiver rendered an entire arbitration agreement unenforceable because it could not be

8    severed.[42]

9       The court severs the offending provision. Without any other substantively unconscionable

10    provision, the remaining provisions are enforceable.

11

12                        **CONCLUSION**

13       The court severs the unenforceable PAGA waiver from the arbitration provision, compels

14    arbitration, and stays the case pending arbitration. *Smith v. Spizziri*, 601 U.S. 472, 474, 476–78

15    (2024) (per curiam) (requiring stay). This resolves ECF No. 10.

16    **IT IS SO ORDERED.**

17       Dated: January 8, 2026

18                                   _____

19                                   LAUREL BEELER
                                  United States Magistrate Judge

20

21

22

23

24

25

26

27

28    [42] Opp'n – ECF No. 12 at 24–26.

United States District Court
Northern District of California